# EXHIBIT A

Filed
D.C. Superior Court
11/29/2012 18:26PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

SONYA M. CRAWFORD
    PERSONAL REPRESENTATIVE
    FOR THE ESTATE OF MARTIN
    CRAWFORD
15819 Arcade Ave.
Cleveland, Ohio  44110

                **Plaintiff,**

    V.                       **CIVIL ACTION NO. 2012 CA 003693 B**
                                  Assigned to:  John Ramsey Johnson
                                  Description:  General Civil

UNITED STATES OF AMERICA, et al.

### AMENDED COMPLAINT
(Negligence, Theft, Fraud, Recovery of Funds and Property and Conversion)

      COMES NOW the Plaintiff, Sonya M. Crawford, and by way of an Amended Complaint and states the following:

### JURISDICTION

1. This Court has jurisdiction pursuant to The United States Constitution, Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b) and it's ancillary jurisdiction.

2. On March 8, 2011 the Plaintiff , Sonya M. Crawford, became the Successor Personal Representative for the Estate of Martin Crawford in 2008 ADM 1324, Superior Court of the District of Columbia, Probate Division and is an adult resident of the State of Ohio and a citizen of the United States of America.

3. The Defendant Bank of America, N.A. is a licensed corporation and at all times herein was doing business in the District of Columbia.

4. The Defendant, Catherine Y. Garcia, is a resident of the District of Columbia and from information and belief, is a citizen of the United States of America and is sued personally and in

her official capacity.

## FACTUAL BACKGROUND

5. The Plaintiff, Sonya M. Crawford, is the Successor personal representative of the Estate of her father, Martin Crawford ("Decedent"). She is alleging negligence, theft, fraud, and seeks recovery of funds and property, conversion of property, breach of contract related to improper administration of care while he was a resident of the Armed Forcers Retirement Home in Washington, D.C. and a conspiracy to prevent her from pursuing her claims and to conceal and maintain secrecy regarding the manner and activities surrounding the treatment of the Decedent during his stay and after his death. Plaitiff alleges that because of the deceptive and intentional conduct of the United States agents, servants and employees herein she relied upon their representations about investigating her claims and did so to her detriment. Having been lulled into a false sense of belief that the United States would follow through with their promises only to find out that they never had any intentions of doing so, it was only then that the Plaintiff had no choice but to file this claim.

Mr. Crawford was retired from the U.S. Air Force and had been a resident of the facility since 1995 and as such was entitled to the reasonable care and treatment extended to and paid for by the retirees and residents.


6. That during the course of his stay the Decedent was mental and physical health deteriorated to such an extent that the family because increasing concerned about his condition and the lack of care and services provided to the Decedent.


7. That pursuant Plaintiff, PR sought and did receive a Court order for an examination of the Decedent which was done by Gayle Bradley Starkes, LICSW, LCSW-C, LCSW on June 20, 2008 and June 24, 2008. Her finding were as follows:

"The subject has physical and mental impairment. As a result, the subjects' ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that:

the subject lacks the capacity to take actions necessary to obtain, administer and dispose of : real

and personal property, intangible property, business property and benefits and income.

It further states that "Mr. Crawford's medical record indicates a number of medical

conditions, which need to be responded to on a consistent and long term basis. His physical

diagnosis consist of both chronic and acute medical needs. Therefore, a more therapeutically

stable and consistent environment with more options for level care is needed for the Subject.

Additionally, the Subjects presents as having mental health needs, which are not being

addressed. There are a number of indicators of dementia, depression, and erratic behavior. Up

to this point, the Subject's mental health needs appear to have not been addressed.

The Examiner further notes:

"A review of the Subjects medical record(s) at the Armed Forces Retirement

Home(AFRH) revealed no progress notes since 1996. There was no psychological or social

assessment of the subject in either the AFRH or Walter Reed medical records. Therefore a

comprehensive overview of the Subject was hindered."

She further found that "the subject currently lacks the capacity to take actions necessary

to make health care decisions, to provide health care, to provide food, clothig and shelter, to

provide personal hygiene and other care without which serious physical injury or illness is more

likely to than not to occur."

She finally states that as a result of his physical and mental health impairment he is

unable to exercise the necessary and appropriate judgment and insight to discern, protect or plan

for his needs and interest.

In July 2008 he was hospitalized and treated for colon cancer at Walter Reed Medical

Center. In October 2008, not being fully recovered, he was discharged back to AFRH for

rehabilitation care. On September 22, 2008 the D. C. Superior Court, Probate Division granted

Plaintiff's Petition seeking the appointment of a guardian, a conservator and a personal examiner

to evaluate the Decedent.

8. That during the course of his stay at the AFRH the Decedent maintained a banking relationship with the Defendant Bank of American. During the course of that relationship Mr. Crawford was approached and befriended by the government's agent and employee Catherine Y. Garcia, an employee of the Army Air Force Exchange Service who by trick, device and scheme and with the knowledge and assistance of employees and agents of Defendant BOA had her name added to the Decedent's back accounts making them joint accounts with a balance in excess of $70,000.00.

9. That Bank of America had a duty to exercise reasonable care with respect to the Decedent's account, that they failed to exercise due care and their breach of duty to do so resulted in the loss of the Decedent's funds and property. That the Defendant BOA breached it's duty to properly monitor his account, their breach permitted others to fraudulently gain access to his funds on a continuous bases and to take control over his monies knowing that he was incapable of protecting his assets.

9. Katherine Wiedman, Esq. was appointed Guardian and Conservator for Martine Crawford on September 23, 2008. Ms. Wiedman, during the course of her duties discovered that funds had been taken by Ms. Garcia from Decedent's account. Ms. Wiedman was prevented by employees of BOA from closing the accounts which afforded Ms. Garcia the opportunity to remove additionally funds.

10. That immediately following the Decedent's death on December 11, 2008 Catherine Y. Garcia filed a fraudulent will and was appointed the Personal Representative thus allowing her to continue to have maintain control and use of the Decedent's funds with the full knowledge and assistance of BOA employees and agents.

11. That in 2007 and 2008, the Plaintiff, Sonya M. Crawford personally spoke with Ben Laub,

Director of AAFRH regarding the treatment or lack thereof with respect to her father, she raised concerns regarding theft of his property, medical care and solicitations of money and gifts by the staff. She was referred to Mr. Cox and met with him in the presence of Allan Fox regarding her concerns. The Plaintiff and Mr. Fox then met with Charles Dickerson, the Director of Residential Services. She then wrote a letter as requested by the Director outlining my concerns and it was given to Mr. Cox who informed the Plaintiff that her claims were unsubstantiated. Plaintiff, then unsatisfied, contacted the Director Ben Laub and then met with him (the second of three meetings). At that meeting he assured Plaintiff that he would conduct and a thorough investigation. He informed her that AAFRH was an independent agency and that she needn't go any further. After not hearing from him, Plaintiff contacted him and was informed that the investigation was continuing and he would be back in contact with the progress, he did not and that when she attempted to contact him again she was informed that he had been transferred to California and she was not referred to anyone else regarding the so called investigation.

12. In 2008, Plaintiff spoke with Maurice Swenton, Inspector General of AAFRH regarding her complaints and was advised that as an independent agency all complaints must be handled internally by AAFRH, an intentional falsehood. The Inspector General also met with Robert Bunn, Esq. and Mr. Cox regarding the Plaintiff's complaint. At each meeting with the Inspector General and the Director of the facility Plaintiff was very specific with information, dates, parties and loss surrounding the claims she made. Her actions provided AAFRH authorities with the specifics of the claim. At no time was she provided and written acknowledgement of her claim or information that her claims had in fact been passed on to the appropriate authorities to handle said claims. She was purposely misdirected and deceived by the AAFRH authorities to prevent disclosure of the negligent and wrongful activities of the employees, agents and servants of the U.S. Government at that facility.

13. That the Plaintiff spoke with and reported her concerns to Susan Geckler, an investigator for

loss and prevention with AAFES in 2008 after she filed the criminal complaint with D.C. Police on August 2008. She informed me that she was opening an investigation. The case was reassigned to Carol Wassum, another investigator in that unit located at Ft. Meade, Maryland. Plaintiff was then informed by Wassum that the case had been transferred to the general manager of AAFES in Ft. Myers named Kyelee Abboushi. She left the assignment and the Plaintiff was directed to contact the Inspector General in Texas. The case never investigated at that point.

On Wednesday, June 22, 2009 Plaintiff received a return phone call from Virginia Hubrey, the Inspector General's assistant who was the Commander IG name Col. McClurk, in Dallas, Texas who was to refer the matter for investigation to General Counsel for AASES. Stating that they would get back to the Plaintiff in August 2009, they never did.

14. That Plaintiff was further delayed in pursuing legal redress to her claim because of the wrong interference of the Personal Representative, Defendant Catherine Y. Garcia, who blocked and delayed her ongoing theft of the Decedent's estate and Bank of America bank accounts and his personal property at the Retirement Home.

15. That the Personal Representative Garcia was removed from her position after the will was deemed a forgery. Plaintiff was then appointed the Successor Personal Representative and was then able to gain full access to the bank accounts in 2011. The banks had been closed by Garcia prior to her removal and thus were unavailable to the Plaintiff. Plaintiff only become aware of the extent of the theft after her appointment as PR and continue to pursue the claims against the Government in spite of the wrongful actions of AAFRH to hinder her efforts.

## COUNT I

### UNITED STATES OF AMERICA

### ARMY AIR FORCE RETIREMENT HOME

16. The Plaintiff incorporates by references all preceding paragraphs;

17. That the United States of America, by and through its agents, servant, and employee Defendant AAFRH, had a duty to exercise reasonable care in the care and treatment of the Decedent, Martin Crawford while a resident at their facility.

18. That the Defendant USA by and through their agents, servant and employee breached that duty of care in that it failed to provide adequate security and protection from theft of his money and personal property by agents, servants while he was a resident in their facility in a feeble state and unable to care for his personal belongs and handle his financial affairs.

19. That as a direct result of the breach of the standard of care the Decedent suffered the loss of his personal belongings including a motor vehicle (1999 Buick Road Master), a camper, tv, coin collections, money, etc., electronic equipment, a safe with valuables and other personal items in excess of $125,000.00.

WHEREFORE, Plaintiff demands the sum of $125,000.00.

## COUNT 11

### BREACH OF CONTRACT

20. That the Decedent and the United States of American, by and through it's agents, servants and employees entered into a valid contract in 1995 to provide care, security, monitoring, supervision, and maintenance while a resident at the Defendant's facility, the Army Air Force Retirement Home. That consideration for said contract was a portion of his monthly service related retirement pension.

21. That the Defendant and its agents, servants and employees breached said contract in the Spring of 2008 when it failed to perform the services contracted for on a consistent bases including failure to provide adequate care, security for his apartment, monitoring of his living

arrangements, maintenance of his and apartment and providing of a safe environment.

22. That as a direct result of the breach of contract the Decedent had property stolen, was made to live in a filthy and unfit environment with no supervision, was not properly bathed and cared for and basically left abandoned  while suffering from significant mental deterioration and unable to care for himself and did so until the time of his death 12/11/08.

WHEREFORE, Plaintiff demands the sum of $80,000.00 or what every this Court deems just and proper.

COUNT 111

FRAUD

23. That Plaintiff incorporates by reference all preceding paragraphs:

24. That the Defendant United States by and through it's agents, servants and employees at the AAFRH engaged in an intentional course of conduct to avoid providing the necessary care and services contracted for by the Decedent while accepting his money to pay for said services.

That the Defendants took said money on a monthly basis with no intentions of meeting their obligations to provide the services contract for and while holding themselves as doing to his family and love ones.

WHEREFORE,  the Plaintiff demands the sum of $250,000.00 and such other relief as this Court deems just and proper.

COUNT 1V

ARMY AIR FORCES EXCHANGE SERVICE

25. The Plaintiff incorporate by references all preceding paragraphs:

26. That the United States, by and through it's agents, servants and employees at the Army Air
Force Exchange Services there on the ground of the Armed Forces Retirement Home engaged in
a systematic course of conduct to deprive, steal and cheat the Decedent out of his money and
pension.

27. That the Defendants repeated, through their agents, servants and employees and knowing of
the Decedents frail mental health and dementia, harassed, begged, cajoled and tricked him out of
his funds by overcharging him for items sold to him, by convincing him to fund their own
personal expenses including gifts, trips, an automobile (2007-8 Cadillac CTS) and other items.

28. That said unlawful and fraudulent conduct including becoming co-signors on his numerous
bank accounts, identity thefts and false purchasing began and increase as the Decedent's health
deteriorated and was conducted by said agents, employees and servants including Defendant
AAFES employee Catherine Y. Garcia, under the guise of providing services and love and
concern for the Decedent and done over a period of years and up to his death with the full
knowledge that he was unable to protect himself and his assets.

29. That charges and purchases were made on his account totally inconsistent with his needs and
that each and every agent, servant and employee was aware of this unlawful activity and failed to
stop it or inform higher ups.


## COUNT V

## FAILURE TO TRAIN, SUPERVISE AND MONITOR EMPLOYEES

30. The Plaintiff incorporates by reference all preceding paragraphs:

31. That the United States and it's agents, servants and employees failed to properly train, supervised and monitored their employees at that AAFRH regarding their duties and responsibilities for the well being of the residents and the obligation to respect and honor the patients rights with respect to their property, funds and accounts and belongings while being cared for by the Government.

32. That as a direct result of the failure to properly train, supervise and monitor their agents, servants and employees the Decedent was made to suffer thefts, abandonment, emotional distress and anguish.

WHEREFORE, the Plaintiff demands judgment in the amount of $150,000.00 and such other relief as this Court deems just and proper.

## COUNT V1

## THEFT AND FRAUD OF CATHERINE Y. GARCIA

33. Plaintiff incorporates by reference all preceding paragraphs:

34. That Catherine Y. Garcia, an employee, agent and servant of the Defendant and in her personal capacity did steal his money while he was a resident of the AAFRH by taking advantage of his lack of mental capacity to protect and care for himself with the knowledge and tacit approval of the Defendant, the United States.

35. That the Defendant Y. Garcia , did by trickery, guile and greed and with the sole purpose and intent of theft did convince the Decedent to spend large sums of money on her, cause her name to be added as a co-signor on his bank accounts, used his money to purchase for her use an

automobile, pay for trips, expend his funds on her personal luxuries all while suffering from a deficient mental state. That she removed personal items from his apartment or cause them to be moved, hid his money in various bank accounts for her own personal use and with the assistance of the Bank of America at the facility deplete the Decedent's bank accounts.

WHEREFORE, the Plaintiff demands a full accounting of all funds taken from the Decedent with reimbursement and $250,000.00 and such other relief as this Court deems just and proper.

COUNT VII

BANK OF AMERICA, N.A.

FRAUD

36. The Plaintiff incorporates by reference all preceding paragraphs:

37. The Defendant Bank of America, N.A., owned and operated a branch on the grounds of the Army Air Force Retirement Home on North Capitol Street, N.W., Washington, D.C. during the period of the Decedent's residency at that facility.

38. That the Decedent, during his stay opened and maintained a number of bank accounts at Bank of America.

39. That Defendant Bank of America had a duty to monitor, protect and administer the Decedent's funds entrusted to them through their agents, servants and employees and to train them to perform those duties.

40. That Defendant Bank of America, in its' negligence , breached those duties which resulted in and caused the loss and theft of Decedent's money and certificates of deposits from his various accounts.

41.  That Bank of America's employees, agents and servants, once aware of the Decedents' frail mental health and inability to monitor and supervise his money did participate in a campaign to steal his funds by making continuous comments to him in front of others about what their personal financial needs were and what a large sum of money he had in his accounts, said comments were designed only to pressure the Decedent to give them his money.

42.  That Bank of American, with the intent to conceal and delay the discovery of their failure to perform their duties  engaged in a pattern of conduct to prevent the disclosure of the theft of funds by refusing to or intentionally delaying the disclose of bank records, signature cards and related records including deduction from the Decedent's accounts after lawful demands were made by the Plaintiff and her representatives.

WHEREFORE, Plaintiff demands judgment and the repayment and return of all funds wrongfully taken from Decedents accounts plus interest and demands the sum of $10,000,000.00 as compensatory damages and the sum of $150,000,000.00 as punitive damages.

## COUNT VIII

## CONSPIRACY

43.  The Plaintiff incorporates by reference all preceding paragraphs:

44.  That the Defendants named herein, conspired and agreed, at some point during the course of the Decedent's residency at the Army Air Force Retirement Home, to deprive U.S. Air Force retiree Martin Crawford of his health, welfare and money through indifference and abandonment and the theft of his funds from his various bank accounts, to steal his personal belongs and property there at the retirement home and in his unit, to deny him proper care, treatment and services.  The Defendants conspired to conceal and maintain a wall of secrecy regarding their illegal and unlawful activities and to prevent and interfere with any disclosure or investigation of their activities with the purpose of personal enrichment, avoidance of accountability, the

prevention of public disclosure, and to maintain the stellar reputation and good will of the United States Government, the Armed Forces Exchange Service and the Army Air Force Retirement Home which they hid behind here in the Nation's Capitol.

WHEREFORE, Plaintiff demands the sum of $100,000,000.00 as compensation and $300,000,000.00 as punitive damage, jointly and severally.

Respectfully submitted,

_____/s/_____
Grandison E. Hill, Esq.
D.C. Bar 213553
7600 Georgia Ave., N.W.
Suite 203
Washington, D.C. 20012
202.483.8060
Fax: 202.588.1209
Gehilllawoff@aol.com

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that a copy of the foregoing Amended Complaint was to be served by faxed and first class mail postage prepaid this 29th day of November 2012:

Bank of America, N.A.
Registered Agent, Wm. Couper
730 15th Street, N.W., 10th Floor
Washington, DS.C. 20005

Catherine Y. Garcia
1335 C Street, S.E., #22
Washington, D.C. 2003

Melissa G. Rasmussen, Esq.
Special Assistant U.S. Attorney
555 4th Street, N.W., Rm. E-4411
Washington, D.C. 20530

Kevin Farrell, Esq.
Wilson Elser Moskowitz Edelman &Dicker LLP
700 11th Street, N.W., suite 400

Washington, D.C.  20001

_____/s/_____
Grandison E. Hill, Esq.